**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No.

**OLAPLEX, LLC**, a California limited liability company, and **LIQWD, INC.**, a California corporation,

Plaintiffs,

v.

**MV BEAUTY CORP**, a Florida corporation, **C & Y TRADING GROUP, INC.**, a Florida corporation, **LOGISTICS TRADING LLC**, a Florida limited liability company, **YULY PARRA**, an individual, and **CRISTIAN ROJAS**, an individual,

Defendants.

---

**VERIFIED COMPLAINT FOR TRADEMARK COUNTERFEITING, TRADEMARK INFRINGEMENT AND RELATED CLAIMS**

Plaintiffs, OLAPLEX, LLC (hereinafter "OL") and LIQWD, INC. (hereinafter "LI") (collectively "Olaplex"), hereby bring this action against Defendants, MV BEAUTY CORP (hereinafter "MBC"), C & Y TRADING GROUP, INC. (hereinafter "C&Y"), LOGISTICS TRADING LLC (hereinafter "LTL"), YULY PARRA (hereinafter "Parra") and CRISTIAN ROJAS (hereinafter "Rojas") (collectively "Defendants"), and allege the following:

NATURE OF THE ACTION

1. This is an action for trademark counterfeiting, trademark infringement and unfair competition pursuant to the Lanham Act (15 U.S.C. § 1051, *et seq.*) and the common law of the State of Florida.

2. Olaplex manufactures, distributes, and sells a professional hair care product that creates and reconnects bonds in the hair. Olaplex kits are not sold to individuals, but instead to the licensed hair care professional. Olaplex Hair Perfector No. 3 is a take-home product that is sold to consumers by their hairstylist or online at Olaplex.com.

3. Olaplex products are sold in more than 80 countries around the world. Olaplex has been an immediate success and has revolutionized the hair industry. Leaders in the hair industry have referred to Olaplex as "game changing," "revolutionary," and a "miracle product" that is the "holy grail of hair product[s]."

4. Defendants, operating under the name "Your Best Beauty Choice," are engaged in the unlawful enterprise of tampering with and removing product codes from genuine Olaplex products, and subsequently offering for sale and selling these decoded products (hereinafter, the "Counterfeit Products") to consumers.

5. Olaplex's product codes help ensure that the consuming public receives only safe and genuine Olaplex products, and are critical to Olaplex's anti-counterfeiting and quality control efforts. Counterfeit Olaplex products, such as those sold by Defendants, bear no code at all. In most cases, Olaplex has no way of knowing whether

the counterfeits with no codes were manufactured without a code or were subsequently decoded.

6. Decoded, counterfeit products are no longer traceable to the distributor who diverted the units from their authorized channels of trade, are sold outside of these authorized distribution channels, and are frequently commingled with other counterfeit beauty products.

7. On information and belief, Defendants remove the codes and other anti-counterfeiting devices from thousands of Olaplex products per year. This conduct interferes with Olaplex's quality control and anti-counterfeiting efforts, in which the product codes play a vital role, and puts at risk the health and wellbeing of the consuming public. Indeed, it is for this reason that Defendants' conduct is a felony under Florida's Anti-Tampering Act, FLA. STAT. ANN § 501.001, *et seq*., and, to the extent it affects interstate or foreign commerce, a criminal offense under the Federal Anti-Tampering Act, 18 U.S.C. § 1365.

8. This Court, as well as the Eleventh Circuit Court of Appeals, has held that the sale of decoded beauty products violates the Lanham Act. *See, e.g., Davidoff & Cie SA v. PLD Int'l Corp.*, 56 U.S.P.Q.2d 1753 (S.D. Fla. 2000), *aff'd*, 263 F.3d 1297 (11th Cir. 2001). Through this action, Olaplex seeks to stem the tide of unlawful and potentially dangerous beauty products at its source.

JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338 because this action involves substantial claims arising under the Lanham Act. This

Court has jurisdiction over Olaplex's related common law claims pursuant to 28 U.S.C. §§ 1338 and 1367.

10. This Court has personal jurisdiction over Defendants because Defendants have distributed, offered for sale, and/or sold the Counterfeit Products within this State (and specifically within this District), have engaged in acts or omissions within this State causing injury, have manufactured or distributed products used or consumed within this State in the ordinary course of trade, or have otherwise made contacts with this State sufficient to permit the exercise of personal jurisdiction.

11. This District is a proper venue pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the acts or omissions giving rise to Olaplex's claims occurred in this District. Specifically, Defendants have personally sold the Counterfeit Products to consumers from within this District.

THE PARTIES

12. Plaintiff OL is a limited liability company organized and existing under the laws of the State of California, having its principal place of business at 1482 E. Valley Rd., Suite #701, Santa Barbara, California 93108.

13. Plaintiff LI is a corporation organized and existing under the laws of the State of California, having its principal place of business at 1482 E. Valley Rd., Suite #701, Santa Barbara, California 93108. LI is the record owner of the trademarks at issue in the instant action and licenses such trademarks exclusively to its affiliate OL for use and sub-licensing in connection with OL's business.



**FRIEDLAND VINING, P.A.** • 9100 S. Dadeland Blvd., Suite 1620, Miami, FL 33156 •
(305) 777-1720 • (305) 456-4922 telecopier

14. On information and belief, Defendant MBC is a corporation organized and existing under the laws of the State of Florida, having its principal place of business at 15561 SW 27th St., Miami, Florida 33185. Defendant Parra is President of, and the Registered Agent for, MBC.

15. On information and belief, Defendant C&Y is a corporation organized and existing under the laws of the State of Florida, having its principal place of business at 15561 SW 27th St., Miami, Florida 33185. Defendant Rojas is President of C&Y. Defendant Parra is the Vice-President of, and the Registered Agent for, C&Y.

16. On information and belief, Defendant LTL is a limited liability company organized and existing under the laws of the State of Florida, having its principal place of business at 15561 SW 27th St., Miami, Florida 33185. Defendant Parra is Managing Member of, and the Registered Agent for, LTL.

17. On information and belief, Defendant Parra is an individual residing at 15561 SW 27th St., Miami, Florida 33185. Parra also operates the business of Defendants at 12485 SW 137th Ave., Suite 212, Miami, Florida 33186.

18. On information and belief, Defendant Rojas is an individual residing at 15561 SW 27th St., Miami, Florida 33185.

## FACTUAL ALLEGATIONS

### Plaintiffs and the Olaplex Trademarks

19. Since 2014, Olaplex has extensively and exclusively sold goods bearing the **OLAPLEX®** trademark throughout the United States. Olaplex has the exclusive right to use and reproduce the **OLAPLEX®** trademark. As a result of Olaplex's extensive

marketing and sales of products bearing the **OLAPLEX®** trademark, the **OLAPLEX®** trademark has acquired considerable value and is well known to the consuming public and trade as identifying and distinguishing Olaplex products.

20. Rights to the **OLAPLEX®** trademark are evidenced in trademark registrations and applications throughout the world, including by the United States Patent and Trademark Office under Registration No. 4,553,436. In addition, Olaplex owns U.S. Trademark Registration No. 4,557,585 for **BOND MULTIPLIER®** and U.S. Trademark Registration No. 4,682,909 for **BOND PERFECTOR®** (collectively, the "Olaplex Trademarks"), two of its top-selling hair products. The foregoing registrations for the Olaplex Trademarks are valid and subsisting True and correct copies of the above registrations are attached hereto as Exhibit A.

21. Olaplex products are sold through a carefully curated network of salons and distributors around the world, as well as on Olaplex's own website www.olaplex.com.

22. Olaplex exercises strict quality control over the production, bottling, packaging, and distribution of the products sold under its **OLAPLEX®** trademark. Olaplex marks each unit with a product code used as a quality assurance, anti-counterfeiting, and anti-theft measure.

23. These codes are particularly important for maintaining the integrity and guaranteeing the safety of Olaplex's products. For example, the code permits Olaplex to take corrective action in the event a product defect should arise and to protect the market from counterfeit products. The code indicates, among other things, the date the product

was manufactured and provides traceability from the moment the unit is produced to the point of consumer purchase.

24. Olaplex products lacking a code may be stolen or counterfeit, and, even those originally manufactured by Olaplex, are not subject to the same ongoing quality assurances as genuine product intended for sale in the U.S. The Court of Appeals for the Eleventh Circuit has held that the sale of products from which such codes have been removed – also known in the industry as "decoded" products – violates Section 32(1) and 43(a) of the Lanham Act.

25. In some cases, codes are removed from Olaplex products with chemicals, in a manner that does not damage the product packaging. Such chemically decoded products are virtually indistinguishable from counterfeits with no code. Decoded products are generally sold by distributors who are not authorized to sell these products in the United States and are frequently found in mixed shipments with other counterfeit products.

26. On information and belief, genuine products are decoded to hide the fact that they are stolen or counterfeit product, or to conceal the identity of the seller who is diverting the product outside authorized distribution channels.

<u>Defendants' Infringing Conduct</u>

27. On information and belief, Defendants source, market, advertise, offer for sale, and/or sell decoded Counterfeit Products in interstate commerce. The Counterfeit Products sold by Defendants bear counterfeit and confusingly similar imitations of the Olaplex Trademarks in a manner likely to be confused with genuine Olaplex products.

28. On information and belief, Defendants are further unlawfully engaged in the business of stripping Olaplex products of codes and other quality control and anti-counterfeiting devices and introducing them into interstate commerce.

29. Defendants' unlawful activity is plainly exhibited by the below comparison of the "Traveling Stylist Kit" and "No. 3 Hair Perfector" bearing unauthorized imitations of the **OLAPLEX®** trademark to genuine, coded Olaplex products:






**FRIEDLAND VINING, P.A.** • 9100 S. Dadeland Blvd., Suite 1620, Miami, FL 33156 •
(305) 777-1720 • (305) 456-4922 telecopier

30. Defendants' removal of Olaplex's product code significantly interferes with Olaplex's anti-counterfeiting, quality control, and anti-theft programs by hindering Olaplex's ability to trace the products, thereby potentially endangering the public by preventing Olaplex from identifying fakes, resolving quality problems, and recalling defective products. Moreover, the absence of the code and/or mutilation of the packaging are each in and of themselves material differences from the authorized products that are distributed by Olaplex. The Counterfeit Products are therefore infringing under U.S. trademark law.

31. Defendants are not authorized and never have been authorized by Olaplex to produce, manufacture, distribute, advertise, offer for sale, and/or sell merchandise bearing the Olaplex Trademarks, or any variations thereof.

32. On information and belief, Defendants routinely tamper with thousands of Olaplex products bearing the Olaplex Trademarks. During the course of its investigation, Olaplex has identified thousands of units of Defendants' Counterfeit Products available for purchase through websites like eBay.com. A representative sample of such advertisements appears below:




33. Defendants' decoded Counterfeit Products are materially different from Olaplex's genuine goods, but are passed off to the public as genuine products.

34. Defendants' Counterfeit Products are likely to deceive, confuse and mislead purchasers and prospective purchasers into believing that these unlicensed and unauthorized products are authorized by Olaplex. Purchasers and prospective purchasers viewing Defendants' Counterfeit Products and perceiving a defect, lack of quality, or any other irregularity are likely to attribute them mistakenly to Olaplex.

35. Defendants are not associated or connected with Olaplex, or licensed, authorized, sponsored, endorsed, or approved by Olaplex in any way.

36. The likelihood of confusion, mistake, and deception engendered by Defendants' misappropriation of the Olaplex Trademarks is causing irreparable harm to

the goodwill symbolized by the Olaplex Trademarks and the reputation for quality that said marks embody, as well as the efficacy of Olaplex's anti-counterfeiting efforts.

37. On information and belief, Defendants knowingly, willfully, intentionally, and maliciously adopted and used confusingly similar and/or substantially indistinguishable imitations of the Olaplex Trademarks.

38. Defendants' conduct also violates relevant anti-tampering statutes designed to protect consumer health and safety, and deprives Olaplex of the ability to maintain the prestige and reputation of the Olaplex brand.

39. Due to the nature of the product at issue here (i.e., a topical hair product), Defendants' sale of the Counterfeit Products poses a serious risk to public health and safety. Thus, Defendants' actions are causing irreparable harm to Olaplex and the public by threatening consumer welfare and creating consumer confusion.

40. Defendants' conduct is intentionally fraudulent, malicious, willful and wanton.

**FIRST CLAIM FOR RELIEF**
**(Federal Trademark Counterfeiting)**

41. Olaplex repeats and incorporates Paragraphs 1 through 40 inclusive as if set forth verbatim herein.

42. The registrations embodying the Olaplex Trademarks are in full force and effect, and the Olaplex Trademarks are entitled to protection under both federal law and common law.



**FRIEDLAND VINING, P.A.** • 9100 S. Dadeland Blvd., Suite 1620, Miami, FL 33156 •
(305) 777-1720 • (305) 456-4922 telecopier

43. Defendants, without authorization from Olaplex, have used and are continuing to use spurious designations that are identical to, or substantially indistinguishable from, the Olaplex Trademarks in interstate commerce.

44. The foregoing acts of Defendants are intended to cause, have caused, and are likely to continue to cause confusion or mistake, or to deceive consumers, the public, and the trade into believing that the Counterfeit Products are genuine or authorized Olaplex products.

45. On information and belief, Defendants have acted with knowledge of Olaplex's ownership of the Olaplex Trademarks and with deliberate intention or reckless disregard to unfairly benefit from the incalculable goodwill inherent in the Olaplex Trademarks.

46. Defendants' acts constitute trademark counterfeiting in violation of Section 32 of the Lanham Act (15 U.S.C. § 1114).

47. On information and belief, Defendants have made and will continue to make substantial profits and gains to which they are not in law or equity entitled.

48. On information and belief, Defendants intend to continue their infringing acts, unless restrained by this Court.

49. Defendants' acts have damaged and will continue to damage Olaplex, and Olaplex has no adequate remedy at law.

50. On information and belief, the acts of MBC, C&Y, and LTL were done with full knowledge of Parra and Rojas, who directed and controlled such acts.

51. In light of the foregoing, Olaplex is entitled to and demands injunctive relief prohibiting Defendants from using the Olaplex Trademarks or any marks identical and/or confusingly similar thereto for any purpose, and to recover from Defendants all damages, including attorneys' fees, that Olaplex has sustained and will sustain as a result of such infringing acts, and all gains, profits and advantages obtained by Defendants as a result thereof, in an amount not yet known, as well as the costs of this action pursuant to 15 U.S.C. § 1117(a), attorneys' fees and treble damages pursuant to 15 U.S.C. § 1117(b), and/or statutory damages pursuant to 15 U.S.C. § 1117(c).

**SECOND CLAIM FOR RELIEF**
**(Federal Trademark Infringement)**

52. Olaplex repeats and incorporates Paragraphs 1 through 40 inclusive as if set forth verbatim herein.

53. The absence of Olaplex's product codes resulting from decoding renders the Counterfeit Products materially different from Olaplex's products authorized for sale in the United States, and such products are not genuine.

54. Decoded units of Olaplex's hair care products distributed by Defendants are likely to confuse and mislead consumers in the marketplace into believing that these unlicensed and unauthorized products are authorized by Olaplex, when in fact they are not.

55. Defendants' decoding and distribution of products bearing the Olaplex Trademarks is likely to cause confusion, mistake or deception as to the source or sponsorship of these products. As a result of Defendants' unauthorized use of the

federally-registered Olaplex Trademarks on materially different goods, the public is likely to believe that these goods have been approved by Olaplex and are subject to Olaplex's quality control measures.

56. The removal of the product code from Olaplex's products deprives Olaplex of the ability to ensure the consistently high quality of products bearing the Olaplex Trademarks, and to maintain the prestige and reputation of its brands. The removal of the codes also hinders Olaplex's ability to protect the market from counterfeit hair care products.

57. Defendants' infringement of Olaplex's federally-registered Olaplex Trademarks is willful, intended to reap the benefit of the goodwill of Olaplex, and violates Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

58. On information and belief, the acts of MBC, C&Y and LTL were done with full knowledge of Parra and Rojas, who directed and controlled such acts.

59. The foregoing acts of Defendants are causing irreparable injury to Olaplex and to its goodwill and reputation, and will continue to both damage Olaplex and deceive the public unless enjoined by this Court. Olaplex has no adequate remedy at law, injunctive relief is warranted considering the hardships between Olaplex and Defendants, and the public interest would be served by enjoining Defendants' unlawful activities.

**THIRD CLAIM FOR RELIEF**
**(Federal Unfair Competition)**

60. Olaplex repeats and incorporates Paragraphs 1 through 40 inclusive as if set forth verbatim herein.



**FRIEDLAND VINING, P.A.** • 9100 S. Dadeland Blvd., Suite 1620, Miami, FL 33156 • (305) 777-1720 • (305) 456-4922 telecopier

61. Defendants' unauthorized distribution of decoded units of Olaplex's products constitutes a false designation of origin and a false description or representation that Olaplex certifies the quality and authenticity of the Counterfeit Products, when in fact Olaplex does not, and is thereby likely to deceive the public.

62. By removing the codes from Olaplex products, Defendants impair Olaplex's quality control and anti-counterfeiting programs, and deprive Olaplex of the ability to maintain the prestige and reputation of the brands sold under the Olaplex Trademarks.

63. Defendants are using the Olaplex Trademarks with full knowledge that they are associated exclusively with Olaplex and exclusively designate Olaplex products. Defendants' acts of unfair competition are willful and deliberate and with an intent to reap the benefit of the goodwill and reputation associated with the Olaplex Trademarks.

64. Defendants' decoding of Olaplex's products and distribution of the Counterfeit Products violates Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

65. On information and belief, the acts of MBC, C&Y and LTL were done with full knowledge of Parra and Rojas, who directed and controlled such acts.

66. The foregoing acts of Defendants are causing irreparable injury to Olaplex and to its goodwill and reputation, and will continue to both damage Olaplex and deceive the public unless enjoined by this Court. Olaplex has no adequate remedy at law, injunctive relief is warranted considering the hardships between Olaplex and Defendants, and the public interest would be served by enjoining Defendants' unlawful activities.



**FRIEDLAND VINING, P.A.** • 9100 S. Dadeland Blvd., Suite 1620, Miami, FL 33156 •
(305) 777-1720 • (305) 456-4922 telecopier

## FOURTH CLAIM FOR RELIEF
**(Common Law Trademark Infringement and Unfair Competition)**

67. Olaplex repeats and incorporates Paragraphs 1 through 40 inclusive as if set forth verbatim herein.

68. Defendants' acts constitute common law trademark infringement and unfair competition, and have created and will continue to create a likelihood of confusion to the irreparable injury of Olaplex unless restrained by this Court. Olaplex has no adequate remedy at law for this injury.

69. On information and belief, Defendants acted with full knowledge of Olaplex's use of and statutory and common law rights to the Olaplex Trademarks, and without regard to the likelihood of confusion of the public created by Defendants' activities.

70. Defendants' actions demonstrate an intentional, willful and malicious intent to trade on the goodwill associated with the Olaplex Trademarks to the great and irreparable injury of Olaplex.

71. On information and belief, the acts of MBC, C&Y and LTL were done with full knowledge of Parra and Rojas, who directed and controlled such acts.

72. The foregoing acts of Defendants are causing irreparable injury to Olaplex and to its goodwill and reputation, and will continue to both damage Olaplex and deceive the public unless enjoined by this Court. Olaplex has no adequate remedy at law, injunctive relief is warranted considering the hardships between Olaplex and Defendants, and the public interest would be served by enjoining Defendants' unlawful activities.



**FRIEDLAND VINING, P.A.** • 9100 S. Dadeland Blvd., Suite 1620, Miami, FL 33156 •
(305) 777-1720 • (305) 456-4922 telecopier

## PRAYER FOR RELIEF

WHEREFORE, Olaplex prays that:

1. Defendants and all of their agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through, and/or under authority from Defendants, or in concert or participation with Defendants, be enjoined preliminarily and permanently by this Court, from:

a. removing, obscuring, partially-removing or otherwise defacing or obliterating by any means any of Olaplex's product codes on any of the products sold under the Olaplex Trademarks, or importing, exporting, manufacturing, producing, distributing, circulating, selling, offering for sale, advertising, promoting or displaying any of the products sold under the Olaplex Trademarks with a removed, obscured, partially removed or otherwise defaced or obliterated product code;

b. tampering with or mutilating the packaging of Olaplex's products in any manner prohibited by Florida's Anti-Tampering Act, FLA. STAT. ANN § 501.001, *et seq*., or the Federal Anti-Tampering Act, 18 U.S.C. § 1365;

c. using any trademark, service mark, name, logo, design and/or source designation of any kind on or in connection with Defendants' goods or services that is a copy, reproduction, colorable imitation, or simulation of, or is confusingly similar in any way to the Olaplex Trademarks;

d. using any trademark, service mark, name, logo, design and/or source designation of any kind on or in connection with Defendants' goods or services that is likely

to cause confusion, mistake, deception, or public misunderstanding that such goods or services are sponsored or authorized by Olaplex; and

e. passing off, palming off, or assisting in the passing off or palming off of Defendants' goods or services as those of Olaplex, or otherwise continuing any and all acts of unfair competition as alleged in this Complaint;

2. Defendants be ordered to recall all products bearing the Olaplex Trademarks or any other indicia confusingly or substantially similar thereof, which have been shipped by Defendants or under their authority, to any customer, including, but not limited to, any wholesaler, distributor, retailer, consignor, or marketer, and also to deliver to each customer a copy of this Court's order as it relates to said injunctive relief against Defendants;

3. Defendants be ordered to deliver for impoundment and destruction all merchandise, bags, boxes, labels, tags, signs, packages, receptacles, advertising, sample books, promotional materials, stationery and/or other materials in the possession, custody, or under the control of Defendants which are found to adopt or infringe any of the Olaplex Trademarks, or which otherwise unfairly compete with Olaplex and its products and services;

4. Defendants be ordered to file with this Court and serve upon Olaplex, within thirty (30) days of the entry of the injunction prayed for herein, a report in writing under oath and setting forth in detail the form and manner in which Defendants have complied with said permanent injunction, pursuant to 15 U.S.C. 1116(a);

5. Defendants be compelled to account to Olaplex for any and all sales and profits derived by Defendants from the sale or distribution of the Counterfeit Products as described in this Complaint;

6. Defendants be ordered to disclose their supplier(s) of the Counterfeit Products and provide all documents, correspondence, receipts, and/or invoices associated with the purchase of the Counterfeit Products;

7. Olaplex be awarded all damages caused by the acts forming the basis of this Complaint;

8. Based on Defendants' knowing and intentional use of identical and/or confusingly similar imitations of the Olaplex Trademarks, the damages award be trebled and the award of Defendants' profits be enhanced as provided for by 15 U.S.C. § 1117(a);

9. Defendants be required to pay to Olaplex the costs of this action and Olaplex's reasonable attorneys' fees, pursuant to 15 U.S.C. § 1117(a) and the state statutes cited in this Complaint;

10. Based on Defendants' willful and deliberate infringement of the Olaplex Trademarks, and to deter such conduct in the future, Olaplex be awarded punitive damages;

11. Defendants be required to pay prejudgment interest on all damages and profits awards; and

12. Olaplex has such other and further relief as this Court may deem just and equitable.

DATED: April 6, 2017

Respectfully submitted,

FRIEDLAND VINING, P.A.

/s/Jaime Rich Vining
David K. Friedland
Florida Bar No. 833479
Email: dkf@friedlandvining.com
Jaime Rich Vining
Florida Bar No. 030932
Email: jrv@friedlandvining.com

9100 S. Dadeland Blvd., Suite 1620
Miami, FL 33156
(305) 777-1720 – telephone
(305) 456-4922 – facsimile

*Counsel for Plaintiffs*

**VERIFICATION**

In accordance with 28 U.S.C. § 1746, I, Tiffany Walden, Esq. as General Counsel for Plaintiffs OLAPLEX, LLC and LIQWD, INC., declare under penalty of perjury that I have read the foregoing Verified Complaint and that the facts stated therein are true and correct.

Executed in San Clemente, CA, this 5 day of April, 2017.

[signature]
Tiffany Walden, Esq.



FRIEDLAND VINING, P.A. • 9100 S. Dadeland Blvd., Suite 1620, Miami, FL 33156 •
(305) 777-1720 • (305) 456-4922 telecopier

# EXHIBIT A

# United States of America

## United States Patent and Trademark Office

# Olaplex

**Reg. No. 4,553,436**

**Registered June 17, 2014**

**Int. Cl.: 3**

**TRADEMARK**

**PRINCIPAL REGISTER**

CHRISTAL, DEAN V. (UNITED STATES INDIVIDUAL)
1482 EAST VALLEY ROAD, 701
SANTA BARBARA, CA 93108

FOR: HAIR CARE PREPARATIONS; HAIR COLORING PREPARATIONS; HAIR RELAXING PREPARATIONS; HAIR STYLING PREPARATIONS; PREPARATIONS FOR PERMANENT HAIR WAVES , IN CLASS 3 (U.S. CLS. 1, 4, 6, 50, 51 AND 52).

FIRST USE 1-10-2014; IN COMMERCE 1-10-2014.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

OWNER OF U.S. REG. NO. 3,604,429.

SN 86-105,774, FILED 10-30-2013.

VIVIAN MICZNIK FIRST, EXAMINING ATTORNEY

UNITED STATES PATENT AND TRADEMARK OFFICE · DEPARTMENT OF COMMERCE

Michelle K. Lee

**Deputy Director of the United States Patent and Trademark Office**

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

**Requirements in the First Ten Years***
**What and When to File:**

***First Filing Deadline:*** You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. *See* 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

***Second Filing Deadline:*** You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between the 9th and 10th years after the registration date.* *See* 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**The United States Patent and Trademark Office (USPTO) will NOT send you any future notice or reminder of these filing requirements.**

***ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the USPTO. The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. *See* 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. *See* 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

# United States of America

## United States Patent and Trademark Office

# Bond Multiplier

**Reg. No. 4,557,585**

**Registered June 24, 2014**

**Int. Cl.: 3**

**TRADEMARK**

**PRINCIPAL REGISTER**

CHRISTAL, DEAN V. (UNITED STATES INDIVIDUAL)
1482 EAST VALLEY ROAD, 701
SANTA BARBARA, CA 93108

FOR: HAIR CARE PREPARATIONS; HAIR COLORING PREPARATIONS; HAIR RELAXING PREPARATIONS; HAIR STYLING PREPARATIONS; PREPARATIONS FOR PERMANENT HAIR WAVES , IN CLASS 3 (U.S. CLS. 1, 4, 6, 50, 51 AND 52).

FIRST USE 1-10-2014; IN COMMERCE 1-10-2014.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

SN 86-106,997, FILED 10-31-2013.

VIVIAN MICZNIK FIRST, EXAMINING ATTORNEY

UNITED STATES PATENT AND TRADEMARK OFFICE
DEPARTMENT OF COMMERCE

Michelle K. Lee

**Deputy Director of the United States
Patent and Trademark Office**

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

**Requirements in the First Ten Years***
**What and When to File:**

***First Filing Deadline:*** You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. *See* 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

***Second Filing Deadline:*** You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between the 9th and 10th years after the registration date.* *See* 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**The United States Patent and Trademark Office (USPTO) will NOT send you any future notice or reminder of these filing requirements.**

***ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the USPTO. The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. *See* 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. *See* 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

# United States of America

## United States Patent and Trademark Office

# Bond Perfector

**Reg. No. 4,682,909**

**Registered Feb. 3, 2015**

**Int. Cl.: 3**

**TRADEMARK**

**PRINCIPAL REGISTER**

CHRISTAL, DEAN V. (UNITED STATES INDIVIDUAL)
1482 EAST VALLEY ROAD, 701
SANTA BARBARA, CA 93108

FOR: HAIR CARE PREPARATIONS; HAIR COLORING PREPARATIONS; HAIR RELAXING PREPARATIONS; HAIR STYLING PREPARATIONS; PREPARATIONS FOR PERMANENT HAIR WAVES , IN CLASS 3 (U.S. CLS. 1, 4, 6, 50, 51 AND 52).

FIRST USE 5-3-2014; IN COMMERCE 7-3-2014.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "BOND", APART FROM THE MARK AS SHOWN.

SN 86-243,863, FILED 4-6-2014.

TEJBIR SINGH, EXAMINING ATTORNEY

UNITED STATES PATENT AND TRADEMARK OFFICE · DEPARTMENT OF COMMERCE

Michelle K. Lee

**Deputy Director of the United States Patent and Trademark Office**

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

**Requirements in the First Ten Years***
**What and When to File:**

***First Filing Deadline:*** You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. *See* 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

***Second Filing Deadline:*** You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between the 9th and 10th years after the registration date.* *See* 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

***ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. *See* 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. *See* 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.